## JUNK v JONES et

Ohio Appeals, 2nd Dist., Fayette Co.

No. 251. Decided June 11th, 1942.

Troy T. Junk, Washington C. H., for plaintiff-appellee.

W. S. Paxson, Washington C. H., Stephen W. Jones, Cincinnati, for defendants-appellants.

## OPINION

By BARNES, J.

The above entitled cause is now being determined as an error proceeding by reason of defendants' appeal on questions of law from the judgment of the Court of Common Pleas of Fayette County, Ohio.

The proceeding in the trial court

was on plaintiff's petition for construction of the will of John Logan, deceased. This is the second action brought by the plaintiff-administrator de bonis non requesting the construction of this same will. We reviewed the judgment of the trial court in the first case and at that time affirmed. The question now presented is on an entirely different state of facts and although the trial court and the appellants in the instant case both refer to our former opinion as supporting the respective contentions, we are unable to so hold by reason of the different factual conditions.

In both cases the construction of Sections 2 and 3 of the will of John Logan was sought as it applies to the facts stated in the respective cases.

Sections 2 and 3 of the Logan will read as follows:

"2. I hereby give and bequeath to my said wife all income derived from my estate, and if said income prove inadequate to support her in comfort as she shall desire, she shall be permitted to use such part of the principal as she shall require, and her receipt shall be sufficient voucher for payments made to her on such account.

3. On the decease of my wife, if she survives me, otherwise on my decease, the probate court shall appoint a competent administrator with the will annexed, who shall convert my property into money, without occasion to apply to any court for authority, and shall divide the proceeds into nine equal shares, and pay such shares to the following named, if they be living, namely: My sister Anna E. Logan, my brother Frank P. Logan, my nephew, Paul M. Logan, my niece Helen Logan Jones, my nephew Bruce Logan, and also Charles P. Ballard, Constance Ballard, Logan R. Herbert and my cousin Minnie S. Williams. Should any of said legatees die prior to distribution as so provided, the share of such one or more so dying shall be and become part of the principal for division, and the principal be equally paid and distributed among the survivor of those named, except that in case of the prior death of Paul Logan, Helen Jones, Charles P. Ballard or Logan Herbert, leaving issue, the share of either so dying shall pass to and vest in such issue."

The widow, Lizzie Pierce Logan, died September 12, 1939, leaving a substantial portion of said estate unconsumed. Prior to her death Frank P. Logan, a brother of the testator and one of the legatees named in Item 3 of said will, died, leaving no heir, but a widow as only next of kin. The widow of Frank P. Logan was claiming an undivided one-ninth interest as sole heir of Frank P. Logan, on the theory that the interest vested at the date of the death of the testator. At that time the remaining eight mentioned in Item 3 of said will were still living.

In this first action the only question for determination by the trial court and our court was whether or not the widow of Frank P. Logan had any interest in the estate. We affirmed the trial court's judgment that since Frank P. Logan's death preceded that of the widow of the testator, John Logan, no interest passed, and that the residuum should be divided between the remaining eight, as stipulated under Item 3 of the testator's will. Junk v Logan, et al., 35 N. E., Second Series, 774.

The plaintiff, Troy T. Junk, was appointed administrator de bonis non with the will annexed on Sep-

tember 19, 1939, just one week following the death of John Logan's widow. On October 30, 1939, the administrator made a partial distribution of .$3000.00 to each of the remaining eight, and on April 14, 1941, a further partial distribution of $800.00 each.

On June 3, 1941, the sister Anna E. Logan, died, leaving a last will and testament through which the defendants, Stephen W. Jones and Paul M. Logan, were appointed executors. The death of the sister, Anna E. Logan, was just one year, eight months and twenty-three days after the death of the testator's widow, Lizzie Pierce Logan.

The question involved in this case is: Did Anna E. Logan at the time of her death, own a distributive share in the said John Logan estate, which would pass under her last will and testament to the legatees named therein? The trial court answered the question in the negative.

The executors of Anna E. Logan then appealed to this court on question of law. The cause was submitted upon the pleadings and an agreed statement of facts. Under this situation we are confronted solely with the legal proposition, as above indicated.

In the trial court, and in our court, the only brief presented was that of attorneys for the executors of the Anna E. Logan estate.

The plaintiff, administrator de bonis non, stated orally that he was occupying the business of a stake holder, and had no opinion as to the correct solution of the controversy. None of the remaining persons named under Item 3 of the John Logan will appeared in person or by counsel, although duly served with process.

Counsel for appellants present a very able and comprehensive brief. We are also favored with the

written opinion by the trial court, which presents evidence of much study and effort with his usual persuasive analysis. The brief cites and comments on numberless decisions, as does the opinion of the trial court.

Appellants' brief lists the following citations:

Sinton v Bard, 19 Oh St 30;
Richey v Johnson, 30 Oh St 288;
Flickinger v Saum, 40 Oh St 591;
Tax Commission v Oswald, 109 Oh St 36;
Biles v Webb, 118 Oh St 346;
Lash v Miller, 16 OO 204;
Ohio National Bank v Boone, 139 Oh St 261 (Oh Bar 3-9-42);
69 Corpus Juris, pages 605, 606, 607, §1687;
Executors of Eury v State, 72 Oh St 449-454;
Restatement of Law, Parts 3 and 4-260, Property, 1312;
L. R. A., 1918-E, page 1111;
30 American and English Encyclopedia of Law, 2d Ed., 773;
Barr v Denney, 79 Oh St 358;
Junk v Logan, et al., 35 N. E., 2d Series, 774;
Campbell v McHugh, 21 C. C., N. S., 427; affirmed without opinion 78 Oh St 427, and 79 Oh St 445;
41 O. Jur. 787;
Stevens v Carroll, L. R. A., 1918-E, p: 1095, 1097, 1145 et seq;
Atchinson v Francis, L. R. A. 1918-E, pages 1087-1089;
Underhill on Wills, Vol. 1, pages 461-472.

The trial court in his opinion lists the following cases as being supporting:

Junk v Logan et al., 35 N. E., 2d Series, 774;
Barr v Denney, 79 Oh St 358;
Hamilton v Rodgers, 38 Oh St 242;
Richey v Johnson, 30 Oh St 288;

608

Baldwin v Humphrey, 4 C. C. 57;

Webb v Biles, 27 Oh Ap 197; affirmed 118 Oh St 346;

Bank v Hanley, 17 Oh Ap 467-476;

Snyder v Heffner, 33 Oh Ap 380; Starr v Willoughby, 218 Ill., 485 (75 N. E., 1028);

March v March, 186 N. Y., 99 (78 N. E., 704);

In re Jenrich's Estate (Minn.) 266 N. W., 461;

Petition of Anna C. Spencer, 16 R. I., 25 (12 Atl., 124).

We have carefully examined each and every citation and have made an independent research of our own. We are unable to find that any of the references are on all fours with the instant case. Distinguishing features may be readily found in each and all. Most of the cases deal with the question as to whether or not the residuum vested at the date of the death of the testator or was a contingent estate. In the instances where it has been decided that under the facts being considered the residuum was contingent, the contingency was usually the determination of the prior estate. None meets the situation satisfactorily where a situation exists, as in the instant case, providing for conversion into money by the administrator de bonis non and distribution, with the added provisions of succession in the event of death of the distributees prior to distribution.

Some of the cases deal with situations where under the will the title is specifically vested in a trustee or an executor with directed powers. In these cases the will is so specific in its directions as to leave little room for controversy, and the courts very readily have determined that the estate is vested in the trustee pending the execution of the power which usually provides for distribution. To take up

each cited authority and point out wherein the instant case may be distinguished, would add unnecessarily to the length of this opinion. We hasten to say that counsel and the court were warranted in making references which are the nearest in point that can be found, and thereafter arguing their application by analogy.

Counsel for appellants stress the recent case of Bank v Boone, 139 Oh St 361; (Oh Bar 3-9-42). This case is very familiar to us, since the Supreme Court held that the residuum vested at the time of the death of the testator. We do not understand that any such claim in the instant case is being made by counsel for appellants. They do claim that the interest vested at the date of the death of John Logan's widow. The second syllabus of the Boone case reads as follows:

"2. The law favors the vesting of estates at the earliest possible moment, and a remainder after a life estate vests in the remainderman at the death of the testator, in the absence of a clearly expressed intention to postpone the vesting to some future time."

Running through all the cases, not only in this state but in other jurisdictions, we find very frequent pronouncements in effect that the law favors the vesting of estates at the earliest possible moment, but we also find that the courts universally say that the primary object is always to ascertain the intent of the testator, and that the language used will be given its ordinary meaning, unless uncertain or ambiguous.

It is probably not surprising that we are unable to find any case where the testator used the same language as did John Logan in Item 3 of his will. The difference in

text is all important. After an exhaustive and careful reading of all cited authorities, and others, we now revert to the language used by John Logan to ascertain, if possible, the testator's intention.

Counsel on both sides agree that John Logan was a very able lawyer and understood the requisites of making a legal will.

From Item 2 it is discernible that he was primarily interested in the care and comfort of his wife, if she should survive him, and therefore to provide that she should have the income derived from his estate and if the income proved inadequate to support her in comfort as she should desire, then she should be permitted to use such part of the principal as she should require, and her receipt should be a sufficient voucher for payments made to her on such account. John Logan left no children. Of course, this was known to him. He evidently anticipated that following his widow's death there would be a balance and he made provision for the distribution of this balance. At the time of executing his will, he naturally did not know that his wife would survive him, and therefore he made provision in the alternative that on the decease of his wife, if she survived him, otherwise on his decease, that the Probate Court should appoint a competent administrator with the will annexed "who shall convert my property into money without any court authority, and divide the proceeds into nine equal shares, and pay such shares to the following named, **if they be living.**" This clearly indicates that John Logan did not expect his property to be converted into cash prior to the death of his widow. Even a layman would know that it was necessary to so do in order to divide into nine shares. He provided under Item 3 the mechanics under which such conversion would be made. He did not give the remainder specifically to the persons named, but rather conferred on the administrator de bonis non with the will annexed power to sell and convert into cash and then divide. He directed his administrator to divide to nine named persons, if they be living. He further stipulated that should any of said legatees die prior to distribution, as so provided, the share of such one or more so dying shall be and become part of the principal for division, and the principal be equally paid and distributed among the survivors already so named. He also had in mind that this contingency of death might happen and he further provided an exception to the above provision in substance that in case of the prior death of Paul Logan, Helen Jones, Charles P. Ballard or Logan Herbert, leaving issue, the share of either of the four so dying should pass to and vest in their issue. He made no similar provision as to the remaining five, hence the five, in which was included the sister, Anna E. Logan, would be controlled in the event of the death of either, by the general provision that if either die prior to distribution as so provided, the share of such one so dying shall be and become part of the principal for division, and equally paid among the survivors of those so named.

Had John Logan in this Item 3 of his will made a specific bequest of one-nineth to each of the named persons and then continued with the mechanics through which the property should be converted into money and distributed, we then could very easily determine that the interest vested at the time of the testator's death or at the time of the death of the wife. This he did not do. He does not provide that anything is to be paid to them

except following sale and then on distribution. If he had desired the interest of the nine to vest at the date of the death of his wife, he could very easily and no doubt would have said that the administrator de bonis non could make payments to the nine persons named, if they be living at the time of the death of his wife. He does not do this. On the contrary, he directs that the administrator de bonis non shall convert his property into money and divide the proceeds among the following persons, if they be living. This is further emphasized by his subsequent language: "Should any of my said legatees die prior to distribution as so provided, etc." The distribution to which he was referring was that ordered to be made by the administrator de bonis non after conversion of his property into cash.

We are constrained to the view that the language of the will is clear and certain and without ambiguity, and under the plain language no distribution of undistributed property can be made by the administrator de bonis non to the estate of Anna Elizabeth Logan, deceased. The partial distribution made before the death of Anna E. Logan stands.

We determine that the administrator de bonis non shall distribute the remaining estate to the survivors of the nine persons mentioned under Item 3 of the John Logan will and in accordance with its terms.

The judgment of the Common Pleas Court will be affirmed.

Costs in this court will be adjudged against the appellants.

Cause remanded to the Common Pleas Court for collection of costs and further proceedings according to law.

GEIGER, PJ., HORNBECK, J., concur.